IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

ROSALIE E. B.,[1]

          Plaintiff,

          v.

COMMISSIONER OF SOCIAL
SECURITY ADMINSTRATION,

          Defendant.

Case No. 6:17-cv-01257-JR

OPINION AND ORDER

RUSSO, Magistrate Judge:

      Plaintiff Rosalie B. brings this action for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Title II Disability Insurance Benefits. All parties have consented to allow a Magistrate Judge enter final orders and judgment in this case in accordance with Fed. R. Civ. P. 73 and 28 U.S.C. § 636(c). For the reasons set forth below, the Commissioner's decision is reversed and this case remanded for the immediate payment of benefits.

---

[1] In the interest of privacy, this opinion uses only the first name and initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

**BACKGROUND**

Born in 1956, plaintiff alleges disability beginning July 1, 2012,[2] due to depression, anxiety, and post-traumatic stress disorder ("PTSD") stemming from childhood abuse. Tr. 200, 229-37, 343. On March 30, 2016, the ALJ issued a partially favorable decision, finding plaintiff disabled as of May 10, 2013. Tr. 14-26. After the Appeals Council denied her request for review, plaintiff filed a complaint in this Court. Tr. 1-6.

**THE ALJ'S FINDINGS**

At step one of the five step sequential evaluation process outlined above, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 16. At step two, the ALJ determined plaintiff's depressive disorder and PTSD were severe. Id. At step three, the ALJ found plaintiff's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment prior to May 10, 2013. Tr. 17.

Because she did not establish presumptive disability at step three as of the alleged onset date, the ALJ continued to evaluate how plaintiff's impairments affected her ability to work. The ALJ resolved that, as of the alleged onset date, plaintiff had the residual functional capacity to perform "a full range of work at all exertional levels" but with the following non-exertional limitations: "simple routine tasks consistent with a reasoning level of two and unskilled work as defined by the Dictionary of Occupational Titles," and "occasional interaction with the public." Tr. 18.

At step four, the ALJ determined plaintiff could not perform any past relevant work. Tr. 21. At step five, the ALJ concluded that, between July 1, 2012, and May 9, 2013, plaintiff could

---

[2] Plaintiff initially alleged disability as of March 1, 2012, but amended her onset date at the hearing to "July 1, 2012, because after that date there was no [substantial gainful activity]." Tr. 44, 50-51.

perform a significant number of jobs in the national and local economy despite her impairments, such as industrial cleaner, laboratory equipment cleaner, and hand packager. Tr. 22. However, beginning on May 10, 2013, the ALJ found that plaintiff was disabled pursuant to Listing 12.06. Tr. 23-25.

**DISCUSSION**

This case hinges on whether there is sufficient evidence in the record to establish an earlier disability onset date. Specifically, plaintiff argues that the ALJ erred by: (1) failing to weigh the June 2012 and subsequent medical opinion evidence from treating psychiatrist Victor Richenstein, M.D.; (2) discrediting her hearing testimony regarding the extent of her symptoms on or around July 1, 2012; and (3) rejecting the lay witness testimony regarding the period prior to May 10, 2013.

The Commissioner concedes harmful legal error such that the sole issue on review is the proper legal remedy.[3] Plaintiff contends Dr. Richenstein's opinion and her subjective symptom statements should be credited as true, and this case remanded for the immediate payment of benefits. Conversely, the Commissioner asserts further proceedings are warranted because "the inference of a disability onset date without the help of a medical expert is inconsistent with SSR 83-20 and Ninth Circuit case law." Def.'s Mot. Remand 5 (doc. 21).

The decision whether to remand for further proceedings or for the immediate payment of benefits lies within the discretion of the court. Treichler v. Comm'r of Soc. Sec. Admin., 775

---

[3] The Commissioner repeatedly acknowledges that "errors by the ALJ render his decision unsupported by substantial evidence" and therefore necessitate reversal. See, e.g., Def.'s Mot. Remand 4 (doc. 21). Yet the Commissioner argues the ALJ did not err in evaluating the medical evidence, plaintiff's testimony, or the third-party statements. Id. at 6-7. In other words, the Commissioner maintains that no error occurred in regard to the issues raised by plaintiff on appeal but nonetheless asserts further proceedings are required to allow the ALJ to consult a medical expert to determine the proper onset date pursuant to SSR 83-20. Id. at 8-11.

F.3d 1090, 1101-02 (9th Cir. 2014). Nevertheless, a remand for an award of benefits is generally appropriate when: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) the record has been fully developed, there are no outstanding issues that must be resolved, and further administrative proceedings would not be useful; and (3) after crediting the relevant evidence, "the record, taken as a whole, leaves not the slightest uncertainty" concerning disability. Id. at 1100-01 (citations omitted); see also Dominguez v. Colvin, 808 F.3d 403, 407-08 (9th Cir. 2015) (summarizing the standard for determining the proper remedy).

Upon review of the record, the Court finds remand for the immediate payment of benefits is proper. Initially, as noted above, it is undisputed the ALJ committed reversible error in resolving plaintiff's claim. Notably, a plain reading of the ALJ's decision confirms that he neglected to afford any weight to Dr. Richenstein's opinion. Tr. 21. As plaintiff's treating mental health provider, Dr. Richenstein's opinion constituted relevant and probative evidence that the ALJ was required to discuss. See Vincent v. Heckler, 739 F.3d 1393, 1395 (9th Cir.1984) (the ALJ must explain the rejection of all relevant and probative evidence).

Indeed, contrary to the Commissioner's assertion, Dr. Richenstein did not merely provide a Global Assessment of Functioning ("GAF") score. Rather, Dr. Richenstein was significantly involved with plaintiff's treatment; he provided regular counseling for eight months and prescribed multiple psychotropic medications. Tr. 346-54. Moreover, because the Social Security Administration was unable to secure records from the other doctor (i.e., Yan Tan Cheng, M.D.) who treated plaintiff prior to May 10, 2013, Dr. Richenstein's records represent the only medical evidence from the dispositive time-frame. Tr. 49, 56, 60-62, 74-77, 108, 312, 341, 354; see also Coaty v. Colvin, 2015 WL 1137189, *4-5 (D. Or. Mar. 11, 2015), aff'd, 673 Fed.Appx. 787 (9th Cir. 2017) ("contemporaneous self-reports to medical providers, as memorialized by their

treatment notes, [provide] the most accurate portrayal of functioning" where the period at issue is remote).

Second, the record has been fully developed and there are no outstanding issues, such that further proceedings would not be useful. The Commissioner cites the need to consult a medical expert pursuant to SSR 83-20 as requiring further proceedings, however, there is nothing in the record to support that assertion. Dr. Richenstein evaluated plaintiff in June 2012 and opined that she suffered from "progressively worse[ning]" depression and a "complicated anxiety disorder secondary to an unstable upbringing [and] family history of mental illness." Tr. 352-54. He diagnosed plaintiff with bipolar disorder, anxiety disorder, and hypersomnia, and assigned a GAF score of "40 to 50," indicating serious symptoms or impairments.[4] Tr. 354. Thereafter, Dr. Richenstein furnished plaintiff with counseling and medication management on a monthly basis until February 2013, when plaintiff relocated to Washington, D.C., in order to receive financial and emotional support from her brother. Tr. 346-51.

Significantly, the Commissioner cites solely to a December 2012 chart note from Dr. Richenstein as evidence that plaintiff "was more functional" prior to May 10, 2013.[5] Def.'s Mot. Remand 7-8 (doc. 21). Id. Yet, when read in its entirety, this chart note reveals that plaintiff was

---

[4] Although the Commissioner is correct that GAF scores are not determinative in evaluating disability claims, they nonetheless "should be considered as medical opinion evidence under 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2) if they come from an acceptable medical source." Wellington v. Berryhill, 878 F.3d 867, 871 n.1 (9th Cir. 2017) (citation and internal quotations omitted).

[5] Both the ALJ and the Commissioner rely exclusively on this evidence to undermine plaintiff's subjective symptom testimony regarding her functioning between July 1, 2012, and May 9, 2013. Tr. 19; Def.'s Mot. Remand 7-8 (doc. 21). Specifically, the ALJ and the Commissioner point to Dr. Richenstein's notation that, in December 2012, plaintiff was selling her marriage gifts on e-bay. Id. However, the record demonstrates that plaintiff was forced to sell her possessions at the end of 2012 after her spousal support terminated and she was no longer able to work. See, e.g., 51-56, 327, 342.

Page 5 – OPINION AND ORDER

still experiencing symptoms of depression – namely, "pressured speech," fatigue, and difficulty concentrating. Tr. 348. In any event, by January 2013, plaintiff was reporting an increase in symptoms, which persisted through February 2013. Tr. 346-47. As such, this sole reference to improved functioning does not constitute substantial evidence. See Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014) ("[c]ycles of improvement and debilitating symptoms are a common occurrence [with mental health impairments], and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working").

In other words, Dr. Richenstein's report is wholly consistent with the July 2013 report and subsequent medical records of Alexander Isaac, M.D., which the ALJ relied on in finding plaintiff disabled as of May 10, 2013. Tr. 23, 321-25, 333-35, 388. Dr. Richenstein's report is also wholly consistent with plaintiff's hearing testimony, the lay witness testimony, and plaintiff's contemporaneous self-reports to Dr. Isaac concerning her functioning in July 2012. Tr. 50-58, 62-64, 252-60, 294, 313-15, 342.

Additionally, there is no medical or other evidence in the record that conflicts with Dr. Richenstein's records. See, e.g., Tr. 326-32. In fact, the state agency consulting sources, which the ALJ partially rejected, did not have access to any evidence that pre-dated plaintiff's treatment with Dr. Isaac. Tr. 21, 84-85, 96, 108. Regardless, even assuming the state agency consulting source opinions were somehow relevant to the period between July 1, 2012, and May 9, 2013, a "conflict between medical opinions alone does not render evidence ambiguous." Freeman v. Colvin, 669 Fed.App. 861, 861 (9th Cir. 2016) (citation omitted); see also Morgan v. Comm'r of. Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) ("the opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion

of an examining or treating physician") (citations omitted). Thus, further proceedings are not necessary to "resolve inconsistencies between [treating or examining doctor] opinions and those of reviewing medical consultants." Stone v. Comm'r of Soc. Sec. Admin., 2015 WL 5092601, *4 (D. Or. Aug. 26, 2015); see also Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (remanding for the immediate payment of benefits despite inconsistencies between the claimant's examining doctor and the state agency consulting sources). Furthermore, plaintiff's date last insured was December 31, 2017, such that the record cannot be supplemented by additional evidence at this time. Tr. 16.

Third, if plaintiff's testimony and Dr. Richenstein's records were credited as true, the ALJ would be required to make a finding of disability on remand. In relevant part, plaintiff testified at the hearing that she had been experiencing "episodes of depression [followed by] periods of remission . . . and by periods of remission, I mean that I was still taking antidepressant medication and medicine to sleep, but I was relatively high functioning and able to use my skills to earn a living." Tr. 51. However, beginning in mid-2012, plaintiff explained she became "severe[ly] depress[ed]" and "had started to lose some of my cognitive function, and I would become too anxious." Tr. 50. She was also experiencing "PTSD nightmares that, at the time, were not under any kind of control." Id. As a result, plaintiff "couldn't get off the floor" and was, at times, "hysterical. Tr. 54-55. Despite her best efforts, plaintiff was unable to make it into work most days, such that she was "putting in fewer and fewer hours" and, ultimately, quit. Tr. 50-57. The vocational expert, in turn, testified that a hypothetical individual with plaintiff's age, education, and work experience, and self-endorsed limitations, would not be able to perform plaintiff's past relevant work or any other gainful activity. Tr. 72-73.

Finally, the record, as a whole, does not create serious doubt plaintiff is disabled. As discussed herein, no ambiguity exists regarding the onset of plaintiff's disabling depression, anxiety, and PTSD. See, e.g., Tr. 294-815. As the Ninth Circuit recently explained, "SSR 83-20 does not apply when the record has no meaningful gaps." Wellington, 878 F.3d at 874. Accordingly, "[a] medical advisor is not required when, despite some inadequacies, a relatively complete medical chronology of the claimant's condition during the relevant time period is available." Id. (citation and internal quotations omitted). Here, the Social Security administration was unable to obtain records from Dr. Cheng, who treated plaintiff prior to the alleged onset date. Nevertheless, evidence generated by Dr. Richenstein from July 2012 through February 2013, coupled with evidence from Dr. Isaac beginning in May 2013, provides a relatively complete medical chronology of plaintiff's psychological functioning during the period at issue in this appeal.

In sum, plaintiff is nearly 62 years old and applied for benefits approximately six years ago, and there are no outstanding issues given plaintiff's testimony, especially when viewed in conjunction with the medical evidence pre-dating May 10, 2013. Therefore, the proper remedy is to remand this case for the immediate payment of benefits as of the alleged onset date.

## CONCLUSION

The Commissioner's decision is REVERSED and this case is REMANDED for the immediate payment of benefits beginning July 1, 2012.

IT IS SO ORDERED.

DATED this 24th day of September 2018.

    /s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge